CELESTINA ABARCA DE SUÁREZ, Plaintiff and Appellant-Appellee, v. BANK OF NOVA SCOTIA, Defendant and Appellee-Appellant.

No. 5848.   Argued December 23, 1932.—Decided June 19, 1934.

*F. Soto Gras* and *R. Díaz Collazo* for plaintiff-appellant-appellee. *J. Henri Brown, C. Ruiz Nazario,* and *G. E. González* for defendant-appellee-appellant.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Enrique Abarca Sanfeliz, in his capacity as attorney in fact of Celestina Abarca Sanfeliz, brought an action of debt against the Bank of Nova Scotia. It was alleged in the complaint that Celestina Abarca Sanfeliz, widow of Gumersindo Suárez, is the owner of a house which she and her husband leased to the Bank of Nova Scotia on October 22, 1918, at a monthly rental of $275, payable semiannually in advance, for a term of six years, with an option to extend the term for five years more; that upon expiration of the original term of six years, the defendant exercised the option to extend for five years more, and that the extended term expired on October 22, 1929; that by subdivision "C" of the third clause of the said lease it was expressly agreed "that any increase in the amount of the taxes now being paid on said building will be for the account of the lessee and, similarly, all reductions which may be made in the present taxes on the said building will inure to the benefit of the lessee"; that while the said lease was in force, that is, from the year 1918 to the year 1929–30, there was paid to the Insular Treasury, as taxes on the leased property, the sum of $3,393.60; that of this amount the defendant has paid the sum of $301.54 and is now owing to the plaintiff the sum of $3,092.06; that the defendant has been requested on several occasions to pay the said amount due but that it has not paid the same, either in whole or in part.

The defendant filed a demurrer on the ground that on the face of the complaint it did not appear that Enrique Abarca Sanfeliz had any cause of action against the defendant and

that the party really interested and indispensable was Celestina Abarca Sanfeliz, widow of Gumersindo Suárez, who did not appear as plaintiff in the action. The District Court of San Juan, in sustaining the demurrer, held that the real party in interest was Celestina Abarca Sanfeliz and that the action should have been brought in her name, as the case is not covered by any of the exceptions provided in the Code of Civil Procedure. The plaintiff was granted 10 days to amend the complaint. An amended complaint was filed, in which Celestina Abarca Sanfeliz, widow of Gumersindo Suárez, appeared as suing in her own name, and the defendant moved that the amended complaint be stricken out. Thereupon Celestina Abarca Suárez asked the court for leave to amend, and alleged in support of her motion that on the face of the original allegations it did not appear that Enrique Abarca Sanfeliz had brought any action for himself or that he appeared as plaintiff in his own right, and that the only reason why the said Enrique Abarca included his name as representative of Celestina Abarca was that the latter has executed in his favor a power of attorney, wherein the following power is conferred:

"And to represent her in all actions, both civil and penal, summary trials, ex parte matters, governmental, executive, and contested-administrative hearings and proceedings, with power to prosecute complaints, petitions and grievances, to dismiss the same, oppose such as may be instituted against me, or consent thereto; to ratify, impeach, impugn or compromise all litigious matters; to resort to all remedies available under the law, including appeals, and to dismiss the same; to appoint experts; to attend meetings; to appoint solicitors with the same powers enumerated herein and such others as may be proper under the procedural laws of the Island of Puerto Rico."

The lower court authorized the amendment requested and ordered that the amended complaint, which had already been filed, should remain as a part of the record. The defendant again filed a demurrer, which was overruled. After the com-

plaint was answered and a trial held, the court below rendered judgment granting some of the claims of the plaintiff and denying others on the ground of prescription. Both parties appealed.

The defendant-appellant has assigned ten errors. The first three, which may be discussed together since they involve the same question, read thus:

"1.—The District Court of San Juan erred in granting to plaintiff Enrique Abarca Sanfeliz, by its decision of January 27, 1930, which sustained the demurrer to the original complaint, leave to file an amended complaint.

"2.—The District Court of San Juan erred in overruling, by its decision of June 30, 1930, the motion filed by the defendant to strike out the so-called amended complaint of Celestina Abarca Sanfeliz.

"3.—The District Court of San Juan erred in admitting. by its decision of June 30, 1930, the so-called amended complaint of Celestina Abarca Sanfeliz; in granting her motion for leave to amend the original complaint of Enrique Abarca, and in dismissing the opposition of the defendant herein."

The defendant urges that the complaint was not amendable and cites in support of its contention the case of *J. Ochoa & Brother* v. *José González Clemente & Co.*, 29 P.R.R. 948. That was an action brought in the District Court of Mayagüez by J. Ochoa & Brother, acting as general agent in Puerto Rico of Morris & Co. The defendant filed a demurrer, which the court sustained for lack of a cause of action in J. Ochoa & Brother. It was there contended "that the complaint was brought under the responsibility of the complainant described therein and of no other person; that section 51 of the Code of Civil Procedure requires that every action should be brought in the name of the person really interested; that where there is a sole complainant he could scarcely be heard to say that there was a defect of parties when it appeared that the cause of action claimed was brought by a person who had no title to it, and that such a mistaken complainant

firm being the only person before the court, had no right to
ask that someone else be substituted for it." "We might add
here," this court said in its opinion, "that nowhere in the
proceeding does it appear that Morris & Co. are asking any-
thing or have authorized anyone to appear for them, but it
is always J. Ochoa & Brother who appear."

The opinion concludes thus:

"We agree, however, with the court below that the complaint
was unamendable and, furthermore, even supposing that there is
some way of substituting the principals for the agents, that it must
still be the principals who, under their own responsibility, come into
court and make this cause of action their own."

The above-quoted language of the court shows that the
holding in the cited case was that the firm which brought the
action in its capacity as agent "had no right to ask that some
one else be substituted for it." But it was not held that the
plaintiff, if the real party in interest, could not obtain leave
to continue the action in his own name. It is true that in the
opinion it is stated that the complaint was unamendable, but
inasmuch as it was the attorney in fact only who requested
leave to amend, it must be understood that what was meant
by that statement was that the complaint could not be
amended in the manner sought at the instance of the agent.

That this was the view of the court is demonstrated by
the language of the opinion, when it states that nowhere in
the proceeding did it appear that Morris & Co. were asking
anything or had authorized anyone to appear for them, but
it was always J. Ochoa & Brother who appeared, and when
it further says that even supposing that there was some way
of substituting the principals for the agents, it must be the
principals who, under their own responsibility, came into
court and made the cause of action their own.

That is what has been done in the present case. Celes-
tina Abarca, who was the real party in interest, came into
court and requested leave to continue the action in her own

name and to strike out the name of her agent from the complaint. In our opinion only a mere technical error is involved which may be corrected by amendment.

In the case of *Fay* v. *Walsh*, 190 Mass. 374, an action was brought to recover a certain sum of money as the price of lumber sold by the plaintiff to the defendants Walsh, Howard, and Fletcher, jointly. The complaint was filed by William A. Fay. The plaintiff testified that the bills were made out on the bill heads of James Fairfield on which was printed William A. Fay, Agent.'' He further testified that at the time of the sale of the lumber in question, he was acting as the agent of James Fairfield. The defendants contended that the action ought to have been brought in the name of Fairfield, and for that reason a verdict for them should have been granted. In deciding this question the Supreme Judicial Court of Massachusetts said:

"It is plain that the action should have been brought in Fairfield's name, . . . and this ruling should have been given.

"So far as appears this objection is purely technical. It is one which could have been avoided by amendment had it been called to the attention of the judge. Had the defendants told the judge that the reason they asked for a verdict as a matter of law was that the action was brought by the wrong person, the judge in his discretion could have allowed an amendment substituting Fairfield for Fay. *Costelo* v. *Crowell*, 134 Mass. 280. More than that, such an amendment can be allowed now after verdict."

In *Boudreau* v. *Eastman*, 59 N. H. 467, it was held that in the Supreme Court of Pennsylvania, the action was brought by an attorney in fact. The court disposed of the question briefly, as follows:

"It was a mistake to commence the suit in the name of the attorney in fact, but it was a technical mistake, amendable below. and here if necessary."

In *Boudreau* v. *Eastman*, 59 N.H. 467, it was held that in a suit by an agent of an undisclosed principal an amendment could be authorized substituting the principal for the agent,

even after the trial, if not changing the result. 37 Am. Dec. 2490.

In the case of *Hubler* v. *Pullen*, 68 Am. Dec. 621, the defendants alleged that the plaintiffs were not the real parties in interest. The court, over the objection of the defendants, permitted the complaint to be amended by substituting the names Richard B. Pullen and Thomas S. Brown for those of Robert Pullen and Joseph S. Pullen—the last two being names in which the suit was originally instituted. The Supreme Court of Indiana, in deciding the question thus raised, said:

"The code says: 'The court may at any time, in its discretion, and upon such terms as may be deemed proper, for the furtherance of justice, direct the name of any party to be added or struck out; a mistake in name, etc., to be corrected; . . . . . when the amendment does not substantially change the claim or defense.' This provision evidently embraces the amendment under consideration. The action of the court in giving leave to amend seems to have been in furtherance of justice, and not in prejudice of the defendant's rights."

Section 140 of our Code of Civil Procedure provides that the court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect. Our code is practically identical with that of Indiana on this point. However, we do not go as far as the Supreme Court of that State. We confine ourselves to holding in the present case, wherein Celestina Abarca is the real party in interest and the complaint was filed by her attorney in fact, that it is proper to allow an amendment so as to enable the real party in interest to continue the action in her own name. The allowance of this amendment did not change in the least the cause of action; the allegations of the complaint have suffered no other alteration than the elimination of the name of Enrique Abarca Sanfeliz. Only a technical mistake is involved which should

be corrected in the furtherance of justice. The courts generally exercise their discretionary powers in favor of granting amendments of this character, which cause no prejudice to the defendant and do not change the cause of action. The assignments of error submitted on this point can not be sustained.

The fourth assignment is based upon the overruling by the lower court of the demurrer filed against the amended complaint. It is contended that on October 22, 1918, when the contract of lease was made, Celestina Abarca Sanfeliz was married to Gumersindo Suárez and that, as both these persons had participated in the contract, the house which was the object of the agreement belongs to the conjugal partnership. Celestina Abarca, widow of Gumersindo Suárez, alleges that she is the owner of the said house. This allegation could have been more elaborate, but any deficiency therein resulting from a failure to allege that the said property had been awarded to her after the death of her husband, was supplied by the proof. The plaintiff offered in evidence a notarial deed of partition and protocolization of partitional operations, showing the award of the said property to the plaintiff. Thereupon the defendant admitted the first averment of the complaint, namely that Celestina Abarca is the owner of the house in question. The assignment of error noted must be overruled.

The fifth and sixth assignments advert to the overruling by the lower court of the defenses of estoppel and laches pleaded by the defendant. The latter summarizes the reasons which, in its judgment, justify the application of the doctrine of estoppel in this case, as follows:

"The conduct of the plaintiff, through her attorneys in fact, Messrs. León and Abarca—who, notwithstanding their knowledge that the sublessee Sobrinos de Ezquiaga was the concern which paid for the Bank of Nova Scotia the rental installments, the interest, the tax increases and all amounts to be disbursed under the contract, throughout the period from 1922 to October 4, 1929, failed to give

notice of, or collect, any such increases, thereby inducing the Bank of Nova Scotia to believe that the taxes had not been increased or reduced during the said period and to act in accordance with such belief in not collecting from Sobrinos de Ezquiaga any sums on that account until October 4, 1929, when the latter concern was already in liquidation and ceased to exist, all to the prejudice of the defendant who was unable to collect such increase from said sublessee— estops the plaintiff to recover the amount of the tax increases levied during the said period and to deny that the facts were otherwise than as the defendant believed them to be."

We think that there is nothing which precludes the plaintiff from demanding the fulfillment of obligations contracted under the lease and which had not prescribed at the time the action was instituted. The doctrine of estoppel can not be applied in this case, either under the rules laid down by the American decisions or under the principles of our civil law. The terms of the contract are sufficiently clear and leave no room for doubt. The defendant knew that it was bound to pay the tax increases, and so it paid them in 1919 and 1923. It can not claim surprise, or plead that the plaintiff induced it to believe that the taxes had not been increased, when it could easily have learned the true situation, either by soliciting information directly from the lessor or by inquiring at the offices of the Treasury of Puerto Rico. But even assuming that the defendant actually entertained such belief, it has not been shown that by reason thereof it has performed any act to its prejudice as long as the right of action is kept alive, unless the fact of its having failed to pay during several years the tax increases, which it bound itself to pay, could be considered as prejudicial to its interest. The inactivity of the defendant can not grant him the right to plead successfully the defense of estoppel. Let us suppose that the taxes, instead of having been increased had been reduced, and that the defendant bank should have continued paying the monthly rental of $275 without making any deduction, would the bank be precluded from recovering the excess tax amounts

unduly paid? Certainly not. Therefore, the same principle which would entitle the lessee to recover what he has unduly paid should enable the lessor to recover what has not been paid to him. The lower court, in correctly deciding the question at issue, expressed itself as follows:

"In the contract of lease the lessee merely agreed to pay the tax increases, without any obligation, or express provision therefor, on the part of the lessors to give prior notice of the increases to the lessee, so that the latter might have an opportunity to obtain a review of the increased levy before payment. The evidence shows by the uncontradicted testimony of J. León Núñez and Marcos A. Sacarelo that, while Mr. León was the attorney in fact, he demnaded payment of the amounts disbursed for tax increases and the said bank paid, without any objection, $19.90 on November 1, 1919 and $281.64 on January 11, 1923, which latter amount covered various differences up to December 31, 1922. And although it is true that the attorney in fact Enrique Abarca Sanfeliz, who commenced to act as such in 1925, made no demand upon the defendant with references to the subsequent tax-increase disbursements up to October 4 1929, there is no impediment precluding the collection of such increases so long as the statutory period of prescription has not elapsed."

The defendant argues that even if the facts already noted are not sufficient to sustain the defense of estoppel, the conduct of the plaintiff at least justifies the defense of laches. The defendant maintains that no part of the tax increase can be collected, inasmuch as for years Celestina Abarca abandoned any claim she might have thereto and never made any demand upon the bank; that the demands made and the receipts submitted were always for the sum of $275 only. We do not think that laches may be predicated upon the mere fact that Celestina Abarca had not demanded payment of said tax increases. The bank clearly agreed to pay them and it was responsible therefor. Our Civil Code fixes the time for the prescription of actions, and to its provisions we must look in order to determine whether or not the plaintiff has incurred in such delay as precludes her from maintaining

her suit. The plaintiff, of course, is not entitled to recover if the action has prescribed; but, in the absence of such limitation, the fact that she has allowed some time to elapse without demanding the performance of the obligation involved does not preclude her from resorting to the courts for the purpose of enforcing it.

The seventh assignment of error is based upon the refusal of the trial court to find in favor of the existence of a tacit agreement between the parties whereby the rental, which in accordance with the original contract amounted to $275 monthly plus tax increases payable semiannually in advance, was modified, changed, or substituted by a fixed rental of $275 monthly payable semiannually in advance, thereby eliminating the provisions relating to increases or reductions in the taxes. It is further urged that the trial court erred in not holding that the plaintiff, through its agents and attorneys in fact, received said $275 monthly paid semiannually in advance in satisfaction of said agreement.

The defendant contends that there is involved in this case an agreement which in American legal phraseology in known as "accord and satisfaction," and that a similar defense is sanctioned by section 1063 of our Civil Code (1930 ed.), which says:

"The receipt of the principal by the creditor without any reservation regarding interest shall extinguish the obligation of the debtor with respect thereto. The receipt of the last installment of a debt, when the creditor has made no reservation, shall also extinguish the obligation with regard to the previous installments."

The doctrine of "accord and satisfaction," assuming it to be in force in Puerto Rico, is not applicable to the facts developed in the present case. In order to render such an agreement valid, it is necessary that it should be supported by a consideration. It is also essential that the creditor who yields his claim, in whole or in part, should receive some advantage, or that the agreement should result in some detriment, how-

ever slight, to the debtor. We are not averse—on the contrary, we are rather inclined—to adopt those wholesome and just doctrines derived from the common law which are not in conflict with our civil law or the statutes enacted by our Legislature. But we would not be acting wisely in these efforts to enrich and adjust our jurisprudence were we to proceed without first paving the ground through study and investigation. Counsel who contribute with their enlightenment to the difficult and delicate task of furnishing guides and clarifying concepts and principles, which issue from the fountainhead of those systems of law, render a service of exceptional value to the courts and to the bar in general, since their studies and researches, after passing through the crucible of adjudication, translate themselves into decisions which lay down the jurisprudence to be followed. There is no higher or nobler task than that performed by the bar in cooperating with the courts in the formation and development of a just and enlightened jurisprudence.

As regards section 1063 of the Civil Code which the defendant cites, we do not think it applicable herein. No payment of interest is involved in the case at bar, nor the rule with respect to the receipt of the last installment of a debt can be applied. Although, as we hereinafter hold, the taxes in the present case formed part of the rent, nevertheless, it does not appear from the terms of the contract that said taxes were to be paid simultaneously with the monthly installments. The bank itself paid in January 1923, the sum of $281.64 for tax increases covering several semesters in arrears. The conduct of the defendant in making these payments shows that it had not been intended to make any increases or reductions, according to the rise or fall of the taxes, when the monthly installments were paid, for, had it been so intended, the first tax increase and the succeeding ones would have been paid simultaneously with said installments. For these reasons, we find no merit in the assignment of error under discussion.

By the eighth and ninth assignments it is urged that the judgment appealed from is contrary to law and against the weight and preponderance of the evidence. It does not appear, nor is it contended, that the court below erred in making its findings of fact. The errors thus assigned simply raise questions of law which we have already in this opinion.

The plaintiff has appealed also and assigns as error the holding of the trial court that the action to recover the tax increases up to the first semester of the year 1924–25 is barred. It is contended that section 1866 of the Civil Code was erroneously applied.

It was agreed that any increase in the taxes levied upon the leased property would be for the account of the lessee, and that any reduction which should be made in said taxes would inure to the benefit of said lessee. The plaintiff contends that the wording of that covenant does not warrant the conclusion that the tax increases formed part of the rent. It is possible that the covenant, if considered by itself, may create some doubts as to its meaning, but when account is taken of the fact that certain preliminary negotiations took place with reference to the question in controversy, the conclusion reached by the court below, to the effect that the tax increases in this case formed part of the rent, seems reasonable.

Prior to the execution of the lease certain correspondence was exchanged between Alexander McHardy, agent of the Bank of Nova Scotia, and José León, attorney in fact of Gumersindo Suárez, then the owner of the property.

On September 14, 1918, Mr. McHardy wrote to Mr. León stating the conditions which, in accordance with a conversation they had had, should be incorporated in the lease of the house. On September 16, 1918, Mr. León sent his reply to Mr. McHardy advising that the terms suggested seemed satisfactory to him except for certain modifications, among which was the following: "The rent will be raised or reduced according as the taxes now levied on the property are increased

or reduced in the future.'' Mr. McHardy answered that he did not agree with two of the conditions proposed by Mr. León in his letter, namely, that the rent should be paid semiannually and not monthly, and that the rent should be raised or reduced according as the taxes on the property were increased or lowered in the future. Mr. León agreed that the rent should be paid monthly instead of semiannually, but insisted upon the condition that it should be raised or reduced in accordance with the fluctuations of the tax. This was expressly stated by Mr. León in the following language which we transcribe from his letter addressed to Mr. McHardy on September 17, 1918: ''Now, regarding the raising or reducing the rent, according to the increase or reduction that taxes levied on this building may have in the future, this I believe is an equitable proposition, as we remain both in the same position, as the case may be. I trust you will reconsider this point and will accept it.''

Thus ended the correspondence exchanged between the parties with reference to the question of the taxes. The last letter of Mr. León was never answered by the bank, but one month later the contract of lease was signed and the condition suggested and maintained by the attorney in fact of Mr. Suárez was incorporated therein. There is no basis for the assumption that the proposal of Mr. León, regarding the increase or reduction of the rent in accordance with the fluctuations of the taxes, was rejected. On the contrary there is ground to conclude that it was fully accepted by the defendant bank. The original proposal and the agreement reached coincide as to their purpose and clarify, as well as reveal, the intention of the parties on this point. Another element to be considered in connection with that intention is that, as may be inferred from the contract, the lessee was to deal with the lessor and not with the Treasurer, either for the purpose of receiving the benefit of the reduction in the tax or of paying the increases therein, as the case might be. That the parties so understood is shown by the fact that the

increases which the tax underwent during the first years of the lease were paid by the lessee to the lessor.

The defense of prescription is based upon section 1866 of the Civil Code (1930 ed.), which in so far as now pertinent provides:

"Actions to demand the fulfillment of the following obligations prescribe in five years:

" " *      *      *      *      *      *      *

"2.—For the payment of rents, whether derived from rural or from town property."

The lower court held that the tax increases formed part of the rent and, in accordance with subdivision 2 of the above cited section, found that the action was barred as to some of the taxes. In consonance with the views which we have just stated, we hold that the lower court did not err in ruling that recovery of a part of the tax increases was barred after the lapse of five years from the date on which the obligation to pay them arose.

The second and last error assigned by the plaintiff relates to the question of interest. The plaintiff contends that the lower court erred in not awarding interest at the rate of 6 per cent per annum from October 22, 1929. In reality, interest should be allowed from October 4th of the stated year, when the payment of the tax increases was demanded extrajudicially; but inasmuch as the plaintiff in her complaint and in her assignment of errors claims interest from October 22nd of the said year, the judgment appealed from should be modified in accordance with that demand, so as not to grant to the plaintiff greater relief than that for which she prayed.

As to the pronouncement of costs, we think that these should not be imposed on the defendant bank in view of the circumstances concurring in this case.

The judgment appealed from must be modified so as to adjudge the defendant to pay interest at the rate of 6 per cent per annum from October 22, 1929, without special imposition of costs, and as so modified, the judgment is affirmed.

914

Mr. Justice Wolf dissented, stating that he was not in agreement with the opinion of the court as to the first three assignments of error attributed to the lower court; but that if such errors might be disregarded, he was in agreement with the remaining conclusions of the opinion.